May it please the Court, Walter K. Pyle on behalf of Eric Ardoin, the petitioner in this case. When a defendant like Mr. Ardoin, who is charged with killing another man, a drug dealer, is charged as the person who actually did the killing, and then four days into the liberations the jury suggests they don't believe he was the killer, can the judge at that point instruct the jury, you don't have to find him guilty as the perpetrator of the crime. You can find him guilty if he assisted somebody else in the robbery of the victim. Can they do that when there's no evidence that anybody else robbed the victim? Having done that, can the Court prohibit defense counsel from addressing this new theory, this theory of the United States Supreme Court said in Herring v. New York that the right to assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal trial in accordance with the traditions of adversary fact-finding process. Is final argument part of that adversary fact-finding process? The Court in Herring, the next paragraph, page 858, says, yes, there can be no doubt that closing argument for the defense is a basic element of the adversary fact-finding process. First, we were recently down that road in Frost v. Grebe, which cuts against you. I'm afraid, I'm not afraid, I'm not familiar with the case, Your Honor. Well, there was a, we held on bonk that in a scenario quite similar to this, that it was structural error not to allow defense counsel to argue. Supreme Court reversed this, said it has to, had to be, we had to conduct a harmless error analysis. I do recall the case, Your Honor. So here we are. Let's assume that there's error. Okay. Let's talk about harmlessness. And the California public court said there was error. Yes. They said it was harmless for a number of reasons. One. The State argues it didn't reach the Federal question, only the State question. Right. But they did mention the Sixth Amendment and the Fourteenth Amendment. They mentioned, I guess it raises a question first before we get to harmlessness. If you read the California Court of Appeal decision as not finding constitutional error, but saying under California law there would be error, and then, of course, it went on to look at harmlessness under State law proceedings, would that be the end of the road for your case if we interpret the California Court of Appeal decision as not finding a Federal error? No, because it is Federal error. Herring says it's Federal error. Well, Herring doesn't say that it's Federal error. I mean, the question is, you have a right to a defense. The question is the extent. So it's a question of degree. It's not a question of degree. He wasn't denied an opportunity for defense. Well, he was as to the felony murder theory. The California Court of Appeal says he addressed it. He did not. He didn't mention the word felony murder. He mentioned the word felony two or three times in connection with prior felony convictions based on addressing credibility of the witness. Defense counsel never mentioned the felony murder rule. The California Court of Appeal said, well, he didn't argue it as much as he would have liked to. That's at page 52 of the excerpts. It's at page 53. He adequately addressed the felony murder rule and the aiding and abetting theory. It's at page 53. We can't say counsel's argument on the felony murder issue would have been any different. Of course it would have been different. He didn't address it at all in his closing argument. The California Court of Appeal said the evidence was subject to the interpretation that both defendants participated in the robbery of Rodney Tom. There was no evidence of that. The only evidence was that Mr. Ardon went upstairs to Tom's apartment. There was a struggle. It sounded like a struggle. He came back down. The woman who had been tied up went upstairs and found Tom with his throat slashed. There was no evidence of anybody else in the house at that time. Under the facts presented by the state, either Mr. Ardon was guilty as a perpetrator of the murder or he did not participate. And so the the. Of course, his argument was that he wasn't there at all, right? Yes. Okay. But as counsel said in his motion for new trial, I would have pointed out all this stuff, that it's not applicable, that he did no evidence that he assisted anybody in the robbery of Tom. Mr. Jacquez, who supposedly tied up his wife, was long gone. Well, he did argue, he and the defense counsel did argue that the prosecutor's argument that there could be a conviction or guilty verdict either as what he called the direct killer or the aider and abetter, right? I mean, that was. Counsel did argue that, and I'm not quite sure why he did, because the prosecutor never said that. But he did argue that. He did argue it in the context of aiding and abetting a murder, not aiding and abetting a robbery, which is necessary under felony murder. So he addressed, yes, he addressed, and he said that also in his motion for new trial, he pointed that out. I was arguing aiding and abetting in connection with the aiding and abetting of a murder, not aiding and abetting a robbery. So under all these circumstances, the court of, the California Court of Appeal found error. Their reason for finding harmless error was an unreasonable interpretation of the facts. A, there was no evidence of any felony murder as it related to Mr. Ardoin. And B, Mr. Ardoin never argued felony murder, which was a central part of the, the California Court of Appeal keeps repeating it. He argued felony murder adequately. So under all these circumstances, we suggest that this was a violation of Mr. Ardoin's right to due process and right to effective assistance of counsel. I'd like to save the rest of my time for rebuttal. Very well. We'll hear from the State. May it please the Court. Michelle Swanson on behalf of the State. I'll address the felony murder jury instruction issue first. With respect to sufficient evidence, Mr. Ardoin's position appears to be that the jury had to either accept all of the prosecution witness's testimony or reject it in toto. And that's not true. There are parts of her testimony they could have believed and there are parts of her testimony they could have disbelieved. They could have believed her testimony that all three, her and the two co-defendants were in the house before the murder. They could have disbelieved her testimony that she had no knowledge of what was going to happen and no involvement in what was going to happen. They could have rejected her testimony that she was tied up. They could have rejected her testimony that her husband walked out of the house. They could have believed, based on her testimony and the other objective evidence in the case, which was Mr. Ardoin's DNA evidence under the victim's fingernail, that he was in the room and that either Ms. Burgos or Mr. Raquez was in the room with him and that one of them struck the fatal blow. You know, the problem with this case is you're making very effective arguments about what they could have done, might have done, and the reasons they could have. But in this trial, the defendant didn't have the opportunity to make those arguments about what the jury should have or could have rejected in her testimony or not. Don't you think that argument has an impact on the jury or is it just wasted? So you're talking about the closing argument issue? You could have argued that, no, you shouldn't find a verdict of felony murder. How does the jury know all these things, that they could have done this, they could have done that, if there isn't a lawyer to explain that? Well, clearly what happened here at this trial is that the defense put on evidence that Mr. Ardoin was not physically capable of committing this murder by himself. And so But what evidence did he put on that he couldn't have committed the murder? He put on testimony of his doctor, who said he was physically incapable. And the test Robbery? Excuse me? Of committing the robbery, of participating in the robbery? He put on the testimony of his doctor that he was, at the time of the robbery murder, he had severe medical issues that prevented him from moving around and having the strength to perhaps do this by himself. But this you mean the murder? Judge Reinhart's asking purely about the robbery. Well, they're sort of inextricably entwined. I mean, neither defendant chose to argue the elements of robbery or murder. They chose to attack the credibility of the prosecution witness. And both chose to go with the theory that neither one of them was there when the robbery murder happened. Mr. Ardoin's entire defense was that he was physically incapable of doing what Ms. Burgo said, thereby making her incredible, her testimony incredible. And second, that he wasn't even, he didn't know about this. He wasn't there. Right. And he arrived after the fact. And that is But what does it get us, I mean, what we have to decide, I think, to pinpoint the issue is if you think that the California Court of Appeal did find constitutional, federal constitutional error, and then you run it through, we have to determine under Brecht whether there's grave doubt or a substantial and injurious effect by not being able to come back and reopen closing. Isn't that the issue we're trying to figure out? So with respect to what error the State Court found Well, excuse me, were you asking me about what error? Were you asking about harmlessness? Well, I was asking about if you assumed error, if you assumed they found constitutional error, don't you go to Brecht? Okay. If you assume that the State Court found federal constitutional error, we have this new United States Supreme Court case, Davis v. Ayala, which I cited in my appellee's And now if the State Court is found to have found federal constitutional error but found that harmless, you apply the deferential review under AEDPA or Brecht. Right. So Judge McHugh's question Brecht is sort of My question is instead of just kind of throwing out the standards, what is the State's position with respect to Brecht and the evidence here? Brecht is that there has to be a substantial and injurious effect or impact on the jury's verdict. Right. So we don't know what your position is on the harmlessness. So the position on the harmlessness with respect to the closing argument, the failure to reopen the closing argument, is that defense counsel did address this aiding and abetting theory in his closing argument. Right. But not felony murder. You would concede that. Sure. Yeah. Absolutely. But there was, as the California Court of Appeal found, there was really no distinguishing here between one or the other. The evidence showed that this was a continuing robbery, torture, murder situation. You could not separate them. There was no evidence that the robbery happened and then the robbers walked out and then some random other person walked in and committed the murder. The defense attorney also did not choose to attack the elements of the robbery or the murder or the aiding and abetting elements, which suggests he would not have attacked, he would not have chosen. Why does that help you? Because. Because his argument will be, yeah, but now that I know that it's on the table, of course I'm going to attack the elements. Yes, because, this is why it helps me, because he chose to go for a I wasn't there defense. He chose to. I think a reason not to interrupt, but I will. You know, any attorney faced into that circumstance, when you see the jury's question, is going to say, yeah, if I have a closing argument now, I'm going to focus on something different. So why can we presume, in fact, why would we presume that the defense counsel would make the same argument that the jury had apparently rejected? Because he knew, based on the evidence and what the prosecutor argued, that the jury was going to consider aiding and abetting liability, and he addressed that in his closing argument. But not the felony murder. No, it's not the same exact elements, but it's. Exactly. So, I mean, if I were in his shoes, they've got a new theory, different elements, slightly different, but similar. You want to be able to address the jury. What would he have said? Oh, well, I did say that he wasn't there. But if he was there, that's something you can do, but is it reasonable that he would have done that? Was it unreasonable for the State court to decide that he would not have done that? He wouldn't have said, you know, the drugs were kept by these two people, the husband and the wife. That's where the drugs were. I didn't have any drugs. And he had the opportunity to argue that in his original closing argument. He knew that. Well, that has to do with the robbery. But, again, the main defense here was that he was not there, he didn't participate in the robbery or the murder, and we're using the deferential standard of review here, and the State court's contrary finding is not unreasonable. It's not an unreasonable interpretation of the record. That's speculation, though, isn't it? I mean, you're just they were just speculating as well as we could of what the defense counsel would have done. The best evidence, actually, is what he said in his motion for new trial, isn't it? That's the only record evidence we have. Yeah, but the only thing he says, he says that some of the things he says, he would have pointed out that his actions did not fit the elements of aiding and abetting a robbery. But he pointed that out in saying that he wasn't, he didn't know about it, he didn't know it was happening. This was a plan to rob him. He didn't, he said he didn't know any of this was happening. He didn't show up until afterwards. He wasn't involved, he wasn't there. So it wouldn't have changed the fundamental argument. He also says he would have pointed out that the crime that had to be facilitated was robbery, not murder. The instruction told the jury that. These are all legal concepts. But neither defense attorney chose to go into the legal concepts. They chose to go with these guys weren't there, it was all burgos. But the point of it is, if you've adopted a closing argument strategy that apparently the jury has rejected, you certainly want the opportunity to change positions or alter your position, make a new argument. But I guess my position is that he, that was his position before. That was his position during his closing argument. So he was not foreclosed from presenting his defense and presenting his closing argument on that defense. And just because the trial court chose to restrict repetitive argument, that's not a violation of clearly established federal law. Haring says a total foreclosure of closing argument is, indeed, federal constitutional error. But a court can put reasonable limitations on closing argument, and that is exactly what happened here. Isn't it that the Court of Appeal decision is a little bit less than clear on what they found? It seems the State has changed its position on how it reads it. So what is the State's position on whether federal constitutional error was found or not? Well, after going through everything again, I think I put in my brief after, you know, reading through appellant's brief and going back and also reading the opinion, I have come to the conclusion that the State court found only State error. Okay. So what's the consequence of that? So the consequence of that is that if it found no State error, there could be no federal constitutional error. And so this Court would have to find that that was an objectively unreasonable determination by the State court and then use Brecht to apply harmlessness. Well, they didn't reject the federal constitutional error. I'm sorry. They did not say they didn't reject the federal constitutional error. They simply cited federal constitutional law and said even assuming then it wasn't prejudicial. That's different from making a ruling on the merits of the federal constitutional question, isn't it? Well, the way I read the citations that the Court of Appeal employed was to State law and also was to two, I think they were Ninth Circuit cases, but those cases had to do with a violation of federal rules of criminal procedure, not federal constitutional error. So I would say that the State court actually did not, was not citing these propositions for federal constitutional error, and it was merely finding a violation of the State statute that says you're supposed to allow for further arguments if you've reentered in this case. If federal constitutional error is squarely presented to a State appellate court and the State appellate court doesn't rule on the federal constitutional question, where does that leave us? Actually, what my position is, is if the State court rejects the State claim of error, that is an implicit finding of a rejection of federal constitutional error. But it didn't. Well, if you find that it found that there was federal constitutional error, okay. It didn't reject State constitutional error. It said there was State error. Right. Okay. But it might have found State error, but then it applied the State standard of harmlessness. It did not apply the federal constitutional standard of harmlessness. Right. So there's nothing to defer to on the federal constitutional question. Yes. So what you would do if you found that. As for harmlessness. So what you do, well, you don't defer. You would have to find that that was unreasonable, though. An unreasonable determination of no federal constitutional error. And then you go to. They just didn't rule on the federal constitutional question. They did. The rejection of a State law claim is an implicit rejection of a federal constitutional claim. And in that case, you have to. But they didn't reject the State claim. It is an implicit. And I believe I cited cases for that proposition, that if a State court denies a State law claim, it's an implicit rejection of the federal constitutional claim. I think we're talking past each other, but I understand your point.  And so, okay. Brecht, in that case, would be the standard of harmlessness. Can we come back to Brecht? But that is the most forgiving standard of harmlessness for the State. Thank you. You're welcome. Counsel is correct that the court, State courts, any judge has some right to control a filing argument. But this was not repetitive argument, to use the words that counsel used. This was a brand-new theory. Second, if the jury disbelieved Ms. Burgess' testimony, part of her testimony, that does not mean that what she didn't testify to becomes evidence. That's just – that's against the State. If they don't believe the State's witness, then the State has less of a case. They don't somehow get the negative of what the testimony is becomes evidence. And third, the State presents evidence as to what defense counsel would have done or would not have done and what he chose to do in closing. Well, what he chose to do in closing was based on the court's instructions that Albert Jacquez could be found guilty under the felony murder rule. So what counsel chose to do during final argument has nothing to do with what he would have done once he saw that the jury was considering felony murder and not considering him as a direct perpetrator. Would you agree that the best indication of what counsel would have done in the record is in his motion for the new trial? Yes, it's all we've got. And did he say anything about arguing felony murder in that? I don't remember everything that was in his – but he does point out I didn't argue felony murder in my final argument. So under Brecht, we don't know what the jury would have – we don't know what the argument would have been, so how can we know how it would have affected the jury? And if we don't know under Brecht and O'Neill versus McAnich, which interprets Brecht, if we can't tell, to use the words of O'Neill, the petitioner must win. Thank you. Thank you both. Free arguments. The case has heard will be submitted for decision.
judges: Thomas, Reinhardt, McKeown